UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| VS. ) | |
| ) | Case No. 2:10-cr-123-PPS |
| WILLIE HARRIS, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The case is before me on Defendant Willie Harris's Motion to Dismiss Due to the Destruction or Disappearance of Exculpatory Evidence. (DE 307.) That motion is **DENIED**.

**Background**

I don't need to engage in an extensive discussion of the facts of this case to dispose of the pending motion. It should suffice to say that the matter involves allegations of a massive conspiracy to commit credit card fraud by using stolen identities and credit card accounts to withdraw cash advances from banks. The government alleges that Harris was a participant in that conspiracy, if not the mastermind behind it.

Harris's motion claims that there are two CDs containing recorded phone conversations that would (potentially) clear him of the charges. He says the first, which dates back to late 2008, is a recorded version of a call that he had with Lauren Price, another alleged member of the conspiracy. Price previously had implicated Harris in the credit card fraud ring in conversations with Inspector Cecil Frink, who is a U.S. Postal Inspector. Harris says that in the recorded conversation she recanted and admitted to him that her prior statements were untruthful. He also asserts that Price told him that another alleged co-conspirator who had

1

implicated him, Amber Fields, would make a similar statement if she was ever apprehended by authorities.

He tells a similar story with respect to the second CD. He says that it contains three recorded conversations. The first was with Robert Sanders (currently Harris's co-defendant), in which Sanders informed him that two other co-conpirators (Darrielle Watkins and Diontria Frazier) were plotting to implicate Harris in the credit card fraud scheme. The second conversation was a brief one with Frazier. Harris says that she refused to talk on her phone because she feared that it was tapped. The third conversation consisted of her subsequent return call to Harris, presumably from a clean line. He contends that Frazier, who previously had told law enforcement that Harris was involved in the conspiracy, made statements contradicting that accusation.

So that's what Harris claims is on the CDs. Unfortunately, it doesn't seem like he took especially good care of this supposedly exculpatory evidence. He says that he wrote "fraud evidence" in marker on the face of the CD containing the conversation with Price and put both CDs in a single case such that the label would be visible. He claims that he stored this case in his car. The problem with this is that when Harris was arrested, his car was seized for forfeiture, and the police removed all personal items from the car – including the CD case (assuming that Harris is telling the truth about it). According to Harris, law enforcement officers then asked Harris where he wanted these items to be sent. Harris says that he told them to return them to a Cynthia Johnson, who was a friend.

In any event, the police returned his things to his mother in Gary, Indiana. Harris says that he was unhappy with that outcome, because "[his] mama just been known to be irresponsible." I'll note here that there doesn't seem to be any evidence that Harris

2

communicated this concern to Inspector Frink or any other law enforcement officer, though the record isn't entirely clear in this regard. Anyway, if you believe Harris, his mother lived up to his fears. After he was transported to Indiana, he says that he spoke with her and she informed him that all of his personal items had been stolen out of her car.

That's Harris's side of the story. For his part, Inspector Frink agrees that he returned Harris's possessions to his mother, including several CDs, though he says that he never noticed any CDs labeled "fraud evidence." Inspector Frink also disputes that Harris asked him to return the items to Johnson, though he does recall Harris asking him to give Harris's apartment key to her (which Inspector Frink refused to do).

Harris now asks me to dismiss the indictment against him because (he says) the government's alleged negligence in returning the CDs to his mother resulted in the destruction or disappearance of exculpatory evidence. I'll decline to do so for the reasons set forth below.

**Discussion**

It's important to note from the outset that Harris doesn't suggest that law enforcement intentionally withheld known exculpatory evidence. Instead, he merely says that Inspector Frink was negligent when he returned Harris's personal items to his mother – though I should reemphasize that even taking Harris's testimony at face value, if doesn't look like he ever told Inspector Frink or any other officer *not* to give his possessions to her, so this probably overstates things to some degree (but as I'll explain shortly, it doesn't matter even if he did).

That makes my analysis fairly straightforward. "With respect to lost or destroyed evidence, the [Supreme] Court [has] held that 'unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" *United States v. Chaparro-Alcantara*, 226 F.3d 616, 623 (7th Cir. 2000)

(*quoting Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). Bad faith requires more than carelessness. *See United States v. Fletcher*, 634 F.3d 395, 408 (7th Cir. 2010). It requires a "conscious effort to suppress exculpatory evidence." *Chaparrro-Alcantara*, 226 F.3d at 624 (*quoting Jones v. McCaughtry*, 965 F.2d 473 (7th Cir. 1992)). Or to put it a little differently, a defendant seeking to dismiss a case due to the destruction or disappearance of potentially exculpatory evidence must show intentional or purposeful conduct on the part of law enforcement – mere negligence isn't enough. *See United States v. Caffie*, 310 Fed. App'x 24, 27 (7th Cir. 2009).

And what has Harris pointed to in this case to demonstrate that Inspector Frink or any other law enforcement officer engaged in that sort of affirmative misconduct? The answer is absolutely nothing. Let's assume Harris's testimony to be true, and he really did keep CD recordings containing exculpatory phone conversations in his car. Let's give him the benefit of the doubt and assume that a law enforcement officer looked through the CD case and saw a CD labeled "fraud evidence" – though in that instance, I'll note that there is no evidence that this happened, and if it did, it's almost impossible to believe that the officer wouldn't have seized a CD labeled "evidence" as, well, *evidence*. Let's even go one step further and assume (*also* despite the lack of any evidence on this score) that Harris told Inspector Frink that he didn't want the items returned to his mother because she was untrustworthy.

Obviously, that scenario would be absurdly favorable to Harris. I would be assuming that all of his testimony was true, and I would be drawing every inference – including a few highly tenuous ones – in his favor. And yet it still wouldn't be enough to meet the bad faith requirement. Even in that hypothetical world, there's just no indication whatsoever that Inspector Frink gave Harris's personal items to his mother with the intent or hope that she would

4

lose or destroy them. Indeed, if getting rid of the evidence had been his goal, one would think that giving it to Harris's mother would be a particularly bad way to go about it. There's no guarantee that she would lose it, after all. Therefore, because Inspector Frink wasn't trying to destroy exculpatory evidence, he couldn't have been acting with the bad faith necessary for me to dismiss this case. *See, e.g., Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (upholding a refusal to dismiss a case in part because the police officers didn't actually intend to destroy evidence); *see also California v. Trombetta*, 467 U.S. 479, 488 (1984) (same)**.** As a result, the Motion to Dismiss Due to the Destruction or Disappearance of Exculpatory Evidence (DE 307) is **DENIED**.

**SO ORDERED.**

ENTERED:    April 25, 2013.

                                                s/ Philip P. Simon
                                                PHILIP P. SIMON, CHIEF JUDGE
                                                UNITED STATES DISTRICT COURT